# EXHIBIT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAN AND JEAN MCCARTY, et al.,   )
                                   )
        Plaintiffs,    )
                                   )    Hon. Mary Ellen Coster Williams
      v.            )
                                   )    No. 1:14-cv-00316 MCW
THE UNITED STATES OF AMERICA,   )
                                   )
        Defendant.    )

DECLARATION OF DR. MICHAEL KAVANAUGH

Michael Kavanaugh affirms and states:

1.    I am an economist in private practice at PO Box 1228, 19-4231 Kaiwailehua (Road E), Volcano, Hawaii, 96785.

2.    I hold a Ph.D. in economics from the University of Cincinnati (1975) and a BA in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. For forty years, I have worked as an economist for a variety of clients including the U.S. Department of Justice, the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the States of Ohio, California, and Alaska, citizen groups, and private industry.  I have been qualified as an expert in Federal court to opine on financial and economic matters many times.  Exhibit 1 is a recent resume.

3.    Plaintiffs' counsel asked me to address: the appropriate way to update a *Laffey* matrix for the passage of time; to opine, if possible, if the updated *Laffey* rates are appropriate for estimating prevailing rates for complex federal litigation; to describe the new USAO matrix; to opine, if possible, if the new USAO matrix is appropriate for estimating prevailing rates for complex federal litigation; and, to compare the performance of the USAO matrix and the Laffey matrix to estimate prevailing market rates for complex litigation. [1] My opinions are stated to a reasonable degree of certainty under the standards of my profession.

4.    The first time I offered an opinion on the appropriate way to update a *Laffey* matrix was in a 1996 affidavit in *Salazar v. District*

---

[1] A *Laffey* matrix provides an estimate of hourly billing rates for attorneys by years of experience and for their paralegals for providing complex federal litigation in the Washington D.C., area.

*of Columbia,* 123 F. Supp. 2d 8 (D.D.C. 2000).  I opined, *inter alia*, that using the legal services index (LSI), a component of the Consumer Price index (CPI), was an appropriate method for adjusting a *Laffey* matrix for the passage of time.  The result of the update may be termed an LSI-*Laffey*.  The Court explicitly adopted my analysis in its decision.  *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000).  I continue to hold the opinions expressed in that affidavit.  A Memorandum Opinion reaffirming the use of the method I use is found at *Oscar Salazar et al., v. The District of Columbia et al.,* 1:93-cv-00452-GK Document 1680, 01/04/11.[2]

5.     I have prepared declarations on the appropriate way to prepare a LSI-*Laffey* in several other cases. Although I do not maintain a complete list of all my work, I do know my analysis was adopted in the following decisions:  *Salazar v. District of Columbia*, 991 F. Supp. 2d 39 (D.D.C. 2014)("*Salazar III*"), affirmed, 809 F. 3d 58 (D.C. Cir. 2015)("*Salazar V*"); *Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014)("*Salazar IV*"), affirmed, 809 F. 3d 58 (D.C. Cir. 2015)("*Salazar V*"); *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013), reversed on other grounds, 793 F.3d 97 (D.C. Cir. 2015); *Hash v. United States of America* 1:99-CV-00324-MNW, 2012 WL 1252624, at *22 (D. Idaho Apr. 13, 2012); *Salazar v. District of Columbia*, 750 F. Supp. 2d 70 (D.D.C. 2011)("*Salazar II*"); *Interfaith Community Organization v. Honeywell*, 336 F. Supp. 2d 370 (D.N.J. 2004), affirmed, 426 F. 3d 694 (3d Cir. 2005); *PIRG v. Magnesium Elecktron, Inc.,* 1995 WL 866983, *2, 10 (D.N.J. Dec. 28, 1995), vacated on other grounds, 123 F.3d 111 (3d Cir. 1997).

6.     The court in *Makray v. Perez,* awarded attorney fees using the LSI- *Laffey* Matrix.[3] It found, *inter alia*, that:

- The LSI-*Laffey* matrix provides a conservative estimate of the cost of legal services for complex federal litigation in

---

[2] I have prepared affidavits in several other cases on how to create and use a LSI-*Laffey* matrix. Although I do not maintain a complete list of all my work, I do know my analysis was adopted in the cases of *Wilma Eley, Plaintiff, v. District of Columbia*, Defendant. Civil Action No. 11-309(BAH)(AK) (2013), *Hash v. United States of America* 1:99-CV-00324-MNW, 2012 WL 1252624, at *22 (D. Idaho Apr. 13, 2012); *Interfaith Community Organization v. Honeywell*, 808 F. Supp. 2d 744 (D.N.J. 2011); *Interfaith Community Organization v. Honeywell*, 336 F. Supp. 2d 370 (D.N.J. 2004); affirmed, 426 F. 3d 694 (3d Cir. 2005) and in *PIRG v. Magnesium Elecktron, Inc.* Civil No 89-3193, Slip Op. at 2, 10 (D.N.J. Dec. 28, 1995) *vacated on other grounds* 123 F.3d 111 (3d Cir. 1997).

[3] *Makray v. Perez U.S. Secretary of Labor* U.S. District Court for the District of Columbia (CV: 12-520 (BAH))

the Washington, DC area (*Makray* p.9);

- Recent survey data favor LSI-*Laffey* Rates (*Makray* p.14);

- The Plaintiff's requested reimbursement rate, based on the LSI-*Laffey* Matrix is reasonable (*Makray* p.22);

- Reasonable rates are determined by an attorney's skill, experience, and reputation, not firm size (*Makray* p.44); and,

- The LSI-*Laffey* reasonably approximates changes in the cost of complex Federal litigation in the District of Columbia (*Makray* p.46).

7.     On December 18, 2015, The United States Court of Appeals for the District of Columbia affirmed the use of the LSI to update the 1989 Laffey matrix for the passage of time.  This updating provides the hourly rates to pay attorneys when they prevail in matters that have a public interest component and for which they have not been compensated at prevailing market rates.[4]

8.     The method to update a *Laffey* matrix that was affirmed by the United States Court of Appeals for the District of Columbia is the method I used in *Salazar* and in all of the other cases in which I have prepared declarations.  It is the method that was used in *Makray*. It is the method I use in this declaration.[5]

9.     As a matter of economics, today's LSI-*Laffey* matrix billing rates that are based on yesterday's billing rates will provide a reasonable estimate of prevailing billing rates only if yesterday's rates are properly adjusted for the passage of time. [6]

---

[4] Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C.Cir.1988) (en banc) ["SOCM"].  Under SOCM, counsel must show (1) that their work promotes the public interest, and (2) that they have charged below-market rates. If both tests are met then they are entitled to the prevailing market rates.

[5] In this declaration "LSI-Laffey" means the rates produced by adjusting a survey of 1989 legal fees charged by Washington, D.C. area law firms for the passage of time. The survey was conducted in response to the remand in Save Our Cumberland Mountains (SOCM).  The adjustment for the passage of time uses the legal service component of the consumer price index (LSI).  This matrix was first adopted in *Salazar* and was affirmed by The United States Court of Appeals for the District of Columbia, December 18, 2015.

[6] The labor categories are: (1) attorney with more than 20 years of experience; (2) attorney with 11 to 19 years of experience; (3) attorney with 8 to 10 years of experience; (4) attorney with 4 to 7 years of experience; (5) attorney with 1 to 3

10.    The two key questions are: do the billing rates represent fees charged for complex federal litigation; and, how are the rates adjusted for the passage of time.

11.    The LSI-*Laffey* matrix is based on the 1989 Yablonski effort to respond to the remand decision in *Save Our Cumberland Mountains v. Hodel*.[7]  The 1989 effort was designed to update the 1981 hourly billing rates for performing complex federal litigation. The rates were drawn from firms that were able to provide this class of service. Observations of billing rates were drawn from documents and interviews. The attorneys were categorized by years of experience.  The rates were in effect for one-year periods that began in June and ended in May to reflect the belief that attorneys begin practice shortly after law school.[8]  Persons with knowledge and experience with attorney billing rates reviewed the billing rates.

12.    I adjust these rates for the passage of time by applying a price index that measures the change in the price of legal services (hourly billing rates).  The index I chose in 1996 and continue to use today is the Legal Services component of the Consumer Price Index – All Urban Consumers (LSI).  I calculate the mid-year change in the LSI and apply the change to the base year (1989) to arrive at an estimate for the billing rate for the next year (1990). The process is repeated. A chain of estimates results with each year's estimate linked to the proceeding year's estimate by the change in the LSI.  This is an appropriate and common use of index numbers.

13.    In my opinion the 1989 *Laffey* Matrix – estimated billing rates for attorneys by years of experience for performing *complex federal litigation* -- if it is correctly updated will provide a reasonable

---

years of experience, and; (6) paralegal or law clerk.

[7] The documentation used to find the 1989 rates is described in the declaration of Joseph Yablonski (Exhibit 2) submitted in the case of *Broderick v. Ruder*, D.C. Civ. No. 86-1824 (Pratt, J.). The Yablonski effort is recognized as an appropriate means to update the observed *Laffey* rates. *See, e.g., Salazar v. The District of Columbia*, 123 F. Supp. 2d at 13, citing, *Sexcius v. District of Columbia*, 839 F.Supp. 919, 924 (D.D.C.1993); *Trout v. Ball,* 705 F.Supp. 705, 709, n. 10 (D.D.C.1989) (expressly approving use of Yablonski declaration from the *Broderick* case as an exhibit in support of fee petition) and; *Palmer v. Barry,* 704 F.Supp. 296, 298 (D.D.C.1989).

[8] "Practice" is not limited to working for a for-profit law firm.  Valuable legal experience may be gained elsewhere such as regulatory agencies, courts-of-law, international agencies, non-profit entities, and for-profit businesses.

estimate of prevailing hourly billing rates for complex federal litigation.  The billing rates are reported by labor categories that reflect differing levels of legal experience. The adjustment and resulting billing rates by labor category for 2016-17 are shown in Exhibit 3.

14.     USAO expressed concerns about updating a *Laffey* matrix using the LSI instead of a regional CPI for Washington D.C.  I have addressed these concerns elsewhere and in detail by showing that an all-item regional CPI is not a measure of the change in legal services since legal services represents less than 1% of the goods and services sampled in the CPI for the Washington D.C., area.[9]

15.     It is a matter of fact that during the period from 1989 to present time the price of legal services rose faster than either the general rate of all prices as measured by the U.S. Department of Commerce or the cost of living as measured by the U.S. Department of Labor in its Consumer Price Index (CPI).  So, adjusting billing rates using the LSI (an LSI-*Laffey* matrix) rather than using a regional consumer price index (a USAO regional CPI-adjusted matrix) will result in estimates in an LSI *Laffey* matrix that exceed the estimates in USAO's regional CPI-adjusted matrix.

16.     I addressed USAO's concerns about updating *Laffey* with a national index of the price of legal services by showing that USAO's regional consumer price index covers an area much larger than metropolitan Washington, D.C.;  and, that the conditions of competition among law firms to provide complex federal litigation services may be fairly characterized as national.[10]

17.     This discussion about which index to use to adjust a *Laffey* matrix for the passage of time lasted several years.  Then, the U.S. Court of Appeals for the District of Columbia affirmed the use of the LSI-*Laffey* matrix.[11]

18.     In 2016, USAO made two changes to its approach for evaluating requests for attorney's fees in those civil cases where a fee-shifting statute permits the prevailing party to recover reasonable

---

[9] See Kavanaugh declaration in "DL, *et al.*, on behalf of themselves and all others similarly situated" v. District Of Columbia,  United States District Court For The District Of Columbia, Civil Action No. 05-1437 (RCL)

[10] Ibid.

[11] *Salazar* et al. v. *District of Columbia* et al. United States Court of Appeals for the District of Columbia, No. 14-7035,  Decided December 18, 2015.

attorney's fees.[12]  USAO ended its use of a regional CPI to adjust billing rates for the passage of time in favor of a national legal services index that is part of the Producers' Price Index, (PPI-OL) (Offices of Lawyers).  And, USAO replaced its use of *Laffey* rates with a sample of rates drawn by a private firm.

19.    USAO ended its use of a regional CPI to adjust rates for the passage of time in favor of a national legal services index that is part of the Producers' Price Index, (PPI-OL) (Offices of Lawyers). The price changes measured by the LSI are nearly identical to the price changes measured by the PPI-OL.[13] Exhibit 4 shows the difference in the adjustment between the two indices.[14] The PPI-OL adjustment exceeds the LSI adjustment in twelve of the nineteen years.  So, USAO's concerns about updating a *Laffey* matrix with an LSI index are over.[15]

20.    USAO replaced *Laffey* rates with a sample of rates drawn by a private firm.  Although, the USAO does not disclose the details of its sample, its consultant described the sample as consisting of "the billing rates of attorneys in the Washington, D.C., area drawn from law offices of *all firms of all sizes and types*".[16]  So, the new USAO sample is not based on firms engaged in complex federal litigation but is based on the universe of all firms practicing all

---

[12] See: https://www.justice.gov/usao-dc/file/796471/download

[13]   The adjustment is calculated by dividing the index value for June of the current year by the value for June of the previous year.  This is the rate of price change from one year to the next.

[14] The adjustment is the value by which the sample or baseline hourly rate is multiplied each year to produce the updated rate.

[15] Although the LSI and PPI-OL share many features –– a national index specific to legal services, measured monthly -- I prefer the LSI because it is available for a longer period of time.  BLS has maintained the LSI since 1987 and the PPI-OL since 1997.  For the years they have in common, these two indices report comparable rates of price change for legal services.  This means that when the same hourly rate is adjusted with the LSI compared to the PPI-OL, the resulting LSI hourly rate is about the same as the PPI-OL.  So unless it can be shown that there is a material difference in using the PPI-OL instead of the LSI to adjust for the passage of time, I prefer to use one index rather than two.

[16] See the Laura Malowane declaration at ¶32 in *Citizens For Responsibility And Ethics In Washington, Plaintiff, v.  U.S. Department Of Veterans Affairs, Defendant.*  Civil Action No. 08-1481 (PLF) (2014) (CREW v. VA). See also the Laura Malowane declaration on p.4 at ¶12 in *Makray v. Perez* (U.S. Secretary of Labor) Civil Action No. 12-0520 (BAH).

types of litigation in the Washington, D.C., area.[17]

21.    USAO's sample represents a material change to a method that is intended to estimate prevailing market rates for complex federal litigation.  It is material because complex federal litigation earns higher fees than non-federal and non-complex litigation.  So, by including billing rates for all legal services -- not just the rates for complex federal litigation –- USAO's sample underestimates prevailing market rates for complex federal litigation.  Since the adjustment for the passage of time links rates in one year to rates in the next year, USAO's initial underestimates will persist and grow over time.

22.    Exhibit 5 compares the billing rates in a LSI-*Laffey* 2016-17 matrix with those in the USAO 2016-17 matrix.  The LSI *Laffey* matrix is based on billing rates for *complex federal* litigation while the USAO matrix is based rates for *all* litigation services. Since the adjustments for time use nearly identical price indices, the differences in billing rates are the result of using Laffey rates or USAO sample rates.

23.    The LSI *Laffey* matrix provides an estimate of prevailing market rates for complex federal litigation that is superior to the estimate provided by the new USAO matrix.  This is because LSI *Laffey* adjusts billing rates for complex federal litigation while USAO adjusts billing rates for all legal services.  The index used to adjust the rates for the passage of time is no longer at issue because LSI *Laffey* and USAO use nearly identical price indices. .

24.    It is a fair to ask: How do LSI *Laffey* billing rates by years of experience compare with today's, independently-observed rates for complex federal litigation? [18,19]  To make this comparison requires a standard.  Developing a standard requires at least three considerations.

---

[17] The First Affidavit of Daniel A. Rezneck in *Mary Pat Laffey* et. al. v. Northwest Airlines Civil Action 2111-70, March 1983, paragraph. 16 makes clear that the rates that became the 1981 *Laffey* was limited to billing rates for complex federal litigation. The Yablonski declaration was accepted as an update of the Rezneck effort The Yablonski effort was also limited to billing rates for complex federal litigation.

[18] The fee shifting statutes call for reasonable rates. These are interpreted to mean prevailing market rates for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stetson*, 465 U.S. 886, 895 n.11 (1984).

[19] The recent analysis in *Makray* (U.S. District Court for the District of Columbia, Civil Action 12-520, February 8, 2016) finds that the LSI-*Laffey* matrix approximates the prevailing market rate for complex federal litigation.

25.    First, the test should compare the LSI-*Laffey* rate only with those rates that are likely to be charged for complex federal litigation and not with all billing rates at all firms.[20]  The prevailing billing rate for performing complex federal litigation is *not* a simple average of all law firm billing rates but the billing rates for law firms that are in the appropriate market. The appropriate market consists of those firms that can effectively represent civil and constitutional rights. When the 1989 *Laffey* rates were established, the focus was on firms that were presumptively better suited to defending civil and constitutional rights.

26.    Second, LSI-*Laffey* rates are grouped by years from law school (tenure) while survey results (National Law Journal, Altman Weil) are reported by rank (partner, senior counsel, senior associate, associate and the like).  Exercises that compare LSI-*Laffey* rates reported by tenure with rates reported by rank (e.g., those published in journals or provided by subscription services) should be viewed with other evidence.

27.    Third, legal representation of civil and constitutional rights is not a service offered on a volume business or a service accepted on contingency. Volume discounts and contingency fees are set either as a percentage of the size of expected future business; or, as a percentage of the value won.  These business models require placing a dollar value on the outcome.  A dollar value placed on a civil or constitutional right might not be widely accepted.  So, I am of the opinion that including fees that are discounted for volume or fees that are contingent on the value won are in a market that is different from the market where LSI-*Laffey* matrix fees are earned and should not be used as evidence in judging whether LSI-*Laffey* matrix rates are reasonable.

28.    In my opinion, when LSI-*Laffey* rates are compared with contemporary observations of prevailing billing rates the observations should: only include rates for producing complex federal litigation; be reported by years of experience as indicated by years from law school; and, exclude volume rates or contingency fees.

---

[20] Law firms are multi-product entities that bill differently for different services.  While casual observation or firm-wide averages might suggest that small firms charge less than large firms what I think is being observed is that smaller firms are providing a product mix that contains a larger share of simple services.  Since simple services are billed at a lower rate than complex services, firms with product mixes that have large share of simple services will *appear* to have lower billing rates. Nevertheless, when a small firm provides complex services market forces will allow it to bill at the prevailing market rates for complex services.

29.     For this case I compared Plaintiffs counsel's market rate for 2016-17 with: LSI-*Laffey* rates for 2016-17; and, with USAO matrix rates for 2016-17.   Plaintiffs counsel provided the 2016-17 market rate for eight attorney timekeepers and their tenure.  I produced a legal service by working every attorney timekeeper for one hour.  I calculated the bill for these eight hours of legal service at:

$5,414 using market rates;
$5,890 using LSI *Laffey* rates 2016-2017; and
$3,943 using the USAO 2016-17 rates.

30.    These results show that if market rates for complex litigation are unavailable then LSI *Laffey* matrix rates are the better estimator of market rates than are the USAO matrix rates.[21]

31.    As I understand it, plaintiffs' fee application involves hours spent in years prior to 2016-2017.  The rates for 2016-17, in my opinion, are appropriate for valuing all of the hours expended on this civil action regardless of the year in which the work occurred.  As the U.S. Supreme Court observed in *Missouri v. Jenkins* (491 U.S. 274, 283-84 (1989)):

> Clearly compensation received several years after the services were rendered - as is frequently the case in complex civil  litigation – is not equivalent to the same dollar amount received reasonably promptly as legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment – whether by the application of current rather than historic rate or otherwise – is within the contemplation of the statute.

32.    To an economist, the U.S. Supreme Court is stating the principle of opportunity cost.  Namely, there is a time value to funds such that a dollar received yesterday is worth more than a dollar received today.

33.    Restitution implements the principle. To compensate for the delay in payment simply use the current rate for the category that performed the work.  A quantity of legal effort (e.g., an hour) provided in a previous period is restored with the resources needed today to attract and retain competent human capital.

34.    My billing rate for the preparation of this affidavit is $250/hour. Depositions and trial testimony are billed at $350/hour.

---

[21] In this comparison USAO matrix rates underestimate market rates by 24.7 percent; LSI Laffey matrix rates overestimate market rates by 8.8 percent.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  This document executed on September 28, 2016.

*mkavanaugh*
_____
MICHAEL KAVANAUGH

Exhibits
1. Resume
2. *Rezneck* Declaration, *Yablonski* Declaration;
3. LSI- *Laffey* rates by labor category 1989-2017
4. Comparison: LSI-PPI adjustments and OL-PPI-OL adjustments
5. Comparison: LSI-Laffey rates to USAO 2016-17 rates
6. Comparison: LSI-Laffey 2016-17 rates to Market billing rates

**Exhibit 1**

**MICHAEL KAVANAUGH**
**Research Economist**
Phone: 808 985 7031
E-mail:  <u>M.Kavanaugh@att.net</u>

P.O. Box 1228
19-4231 Road E
Volcano, Hawaii 96785

**PRESENT POSITION:** Private Practice since 1985
Volcano, Hawaii 2008 to present
Batavia, Ohio 1993–2008
Washington, DC 1985-1993

**PREVIOUS POSITIONS**:
- Senior Economist, ICF Incorporated, 1983-85, Washington, D.C.
- Research Director, Public Interest Economics, 1976-1983, Washington, D.C. and San Francisco, CA.
- Assistant Professor, Northern Kentucky University, 1975-76

**EDUCATION**:
- PhD., Economics, University of Cincinnati, 1975
- BA. Economics, Xavier University, 1970

**EXPERIENCE**
- An independent research economist with years of experience;
- A national expert in the economic aspects of environmental enforcement and policies for controlling pollution;
- Experienced in regional economic analysis;
- Experienced in the use of economic indices;
- Experienced in valuing damages to persons, households, and commercial enterprises;
- Experienced in assessing natural resource damages; and,
- An author of groundwater management and climate change papers.

Short descriptions of selected projects follow.

**ECONOMICS & FINANCE**

I applied economics to many of the environmental changes of the last thirty years including:

- Estimating the ability of defendants to pay a penalty and the financial effects of penalties in enforcement cases;
- Estimating the benefits of cleaner beaches and rivers;

- Developing methods to determine the effects of water quality policies on agricultural output, employment and income;
- Developing methods to estimate the benefits of preserving groundwater quality;
- Advised on the adequacy of financial assurance mechanisms;
- Estimating expected and realized benefits of irrigation projects; and,
- Critiquing efforts to regulate effluents from several industries.

Designed and used financial after-tax, cash flow models to:

- Measure the ability to pay a penalty and the effects of penalties on financial position;

- Estimate the economic benefit gained by entities that violate law and regulation; and,

- Estimate the burden on the residential sector from municipal compliance with law and regulation.

Provided expert economic and litigation support services to the United States (and others) in Clean Water Act, Clean Air Act, Superfund, RCRA and groundwater quality cases.

*Exxon Valdez* – Estimated the employment and income effects from spending the civil settlement. The work involved characterizing the options in the restoration plan in term of input/output models.

For an environmental group, wrote a declaration on the economic studies needed to establish that a spillover effect was reasonably certain to result from a National Marine Fishery Service proposal to allow an expansion of the Hawaii-based fishing fleet. In the absence of a spillover effect, the expansion of the Hawaii-based fleet would jeopardized an endangered turtle species.

**Natural resource damage assessments**

- Ohio River – valued public resource damages from spills from tugs and barges. The work combined results from Natural Resource Damage Assessment models, studies of the costs of reducing risks to drinking water, and restoration costs.

- Kailua Beach State Park – valued a three-mile beach based on recreational use and estimated the damage from wastewater treatment plant effluent. The work involved reviewing, updating and synthesizing a variety of studies that valued recreation.

- Florida Beaches – valued beach closures from pollution at several beaches. The work involved extensive use of the Natural Resource

Damage Assessment models for coastal and marine environments.

## Energy & Environment

- Commented on economic impacts to employment and structures of planned, utility-scale photovoltaic projects in Southern California.

- Conducted several analyses of U.S. energy industry to estimate current and future energy production and consequences in wetlands and in the North Aleutian Basin.

- Estimated the cost effectiveness of technologies to control produced water discharges in wetlands.

- Estimated the impact of produced water controls on production, royalties and returns from coal bed methane production.

- Estimated the change in rates needed to pay for adopting cooling water intake controls at a nuclear power plant.

- Advised environmental groups on methods to fund the WV acid mine drainage reclamation fund.

- Design team member to size and fund the Superfund.

- Estimated onshore economic impacts of outer continental shelf oil and gas development in California.

- Examined the efficiency and equity of federal leasing policies for oil and gas on public lands

## Global Climate

- Estimated current and future greenhouse gas emissions by fuel, sector and region.  The work involved estimating long-term energy using an economic model based on prices, income and combustion technology.

- Estimated greenhouse gas emissions by jets at altitude by region and the change in emissions from adopting advanced jet technology.

- Modeled current and future emission from the US automobile fleet under various assumptions about future fuel efficiency.

- Analyzed the benefits of substituting hydrocarbon propellants for CFC propellants in aerosol products.  The results showed the same level of consumer satisfaction could be obtained without CFCs and without increasing prices.

**Publications since 2005**
none

**Federal Court Trial Testimony since September 2011**

Sierra Club v. Virginia Electric and Power Company d/b/a Dominion Virginia Power; United States District Court for the Eastern District of Virginia, Richmond, Virginia  Civil Case No. 2:15-CV-112-RAJ-DRM-JAG (6/16)

**Deposition Testimony since September 2011**

Little Hocking Water Association v. Dupont (5/14) 2:09-cv-010Bl-GCS-NMK

Ohio Valley Environmental Coalition, et al. v.  Consol of Kentucky, Inc., (10/14)   cv: 2:13-5005

PennEnvironment and Sierra Club v. PPG, Inc. et al. (1/15)  2:12-cv-00342-RCM

Hawai'i Wildlife Fund, Sierra Club - Maui Group, Surfrider Foundation, and West Maui Preservation Association v. County of Maui  (5/15) Civil Case No. 12-00198 SOM, BMK

California Communities Against Toxics v. Armorcast  Products Company, Inc. et al. (10/15) Civil Case No. Case No.  2:14-cv-05728-PA-FFM

Sierra Club v. Virginia Electric and Power Company d/b/a Dominion Virginia Power; United States District Court for the Eastern District of Virginia, Richmond, Virginia  (5/16) Civil Case No. 2:15-CV-112-RAJ-DRM-JAG

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
MARY PAT LAFFEY, et al.,       )
                               )
               Plaintiffs,     )
                               )    Civil Action
        v.                     )    No. 2111-70
                               )
NORTHWEST AIRLINES, INC.       )
                               )
               Defendant.      )
_____)
```

### FIRST AFFIDAVIT OF DANIEL A. REZNECK

```
CITY OF WASHINGTON     )
                       )  ss:
DISTRICT OF COLUMBIA   )
```

Daniel A. Rezneck, being duly sworn, voluntarily deposes and says:

1.  I am a partner in the firm of Arnold & Porter. I am a member of the Bars of the District of Columbia and New York.

2.  I graduated from Harvard College, B.A., in 1956, and from Harvard Law School, LL.B., in 1959. Following my law school graduation, I served as assistant to Professor Paul A. Freund of the Harvard Law School in 1959-1960 and as law clerk to Justice William J. Brennan of the United States Supreme Court in 1960-1961.

Attachment T

3.   I was admitted to the Bar of the State of
New York in 1959 and the District of Columbia in 1961.
I was an Assistant U.S. Attorney for the District of
Columbia from 1961 to 1964.   I joined Arnold & Porter
in 1964 and have been a partner there since 1969.

4.   I have long been active in Bar affairs in
the District of Columbia.   In 1975-1976, I was President
of the District of Columbia Bar.   Since 1979, I have
served as a member of the District of Columbia Commission
on Judicial Disabilities and Tenure.   I am also a Trustee
of the Public Defender Service of the District of
Columbia.   I have been a member of the Judicial Conference
of the District of Columbia Circuit and the Judicial
Conference of the District of Columbia.   I have served
as a trustee of the D.C. Bar Foundation and have chaired
or been a member of numerous committees appointed by
the courts and the D.C. Bar.

5.   My practice at Arnold & Porter has involved
complex civil and criminal litigation, such as antitrust,
securities, government contracts, constitutional and
other civil rights, and white collar crime.   I have
also represented other attorneys and law firms in a
number of matters.   I have been involved in matters

involving the setting of attorneys' fees.  I have
represented both plaintiffs and defendants in complex
federal court litigation.  Through my practice and
longstanding involvement in Bar activities, I am familiar
with the standards of legal practice in the District
of Columbia.  I am also familiar with the standards
for setting attorneys' fees and other costs of litigation.

6.  For several years, I was in charge of our
pro bono program at Arnold & Porter.  In the course
of that activity, I had overall supervisory responsibility
for several employment discrimination matters in which
our firm represented plaintiffs.  I became generally
cognizant of the characteristics and complexities of
such cases, and I familiarized myself with the standards
governing allowance of attorneys' fees under applicable
federal statutes.

7.  Arnold & Porter is engaged in a broad general
practice, which involves substantial federal litigation
in many areas of the law, including employment
discrimination.  Individual attorney time is customarily
charged to clients on the basis of standard hourly rates
determined by level of experience, without regard to
the subject matter of the particular work or whether
it involves litigation or some other form of legal

representation.  In the context of litigation, our firm does not make any distinction for purposes of billing between in-court and out-of-court time or between or among other types of litigation activity; all are billed at the same standard hourly rates.  Moreover, Arnold & Porter does not differentiate employment discrimination cases for fee-paying clients from other types of litigation with respect to billing; we customarily bill and collect from fee-paying clients in employment discrimination matters at the same standard hourly rates billed for other matters.  Arnold & Porter customarily bills at the same standard hourly rate irrespective of the outcome of the litigation.

8.   Fees in this litigation are being requested for attorneys from the firm of Bredhoff & Kaiser at the following rates:

(a)   $175 an hour for very experienced federal court litigators, e.g., lawyers in their 20th year after graduation from law school and thereafter.  The following individuals are in this category for some of the years they worked on the Laffey case:  Messrs. Gottesman, Bredhoff and Cohen.  By far the largest number of hours in this group were worked by Mr. Gottesman.

(b)   $150 an hour for experienced federal court litigators, e.g., lawyers in their 11th through 19th years after graduation from law school.  Messrs. Gottesman, Cohen, Weinberg and Petramalo are in this category for some of the years they worked on the Laffey case, as is associated counsel Gilbert Feldman.

(c)   $125 an hour for experienced litigators in their 8th through 10th years after graduation from law school.  Messrs. Weinberg, Petramalo and Ms. Julia Penny Clark are in this category for some of the years they worked on the Laffey case.

(d)   $100 an hour for senior associates in their 4th through 7th years after graduation from law school.  Mr. Weinberg, Mr. Petramalo, Ms. Clark, Dennis Clark, Jeremiah Collins, Mady Gilson, and James J. Brudney are in this category for some of the years they worked on the Laffey case.

(e)   $75 an hour for junior associates in their 1st through 3rd years after graduation from law school.  Mr. Clark, Mr. Collins, and Mr. Brudney are in this category for some of the years they worked on the Laffey case.

- 6 -

A chart showing the lodestar figures computed
on the basis of these rates for work on the merits during
the period up to and including February 28, 1983 for
Bredhoff & Kaiser attorneys (and Mr. Feldman) is attached
hereto as Exhibit A.  A chart showing the lodestar figures
computed on the basis of these rates for work on the
attorneys' fee issue for the same period for Bredhoff &
Kaiser attorneys is attached hereto as Exhibit A-1.

Compensation at the same rates for the same
categories of experience is being requested for the
attorneys at Arnold & Porter who have worked on the
attorneys' fee issue, i.e., myself; Jeffrey A. Burt,
a 1970 law school graduate; and Timothy J. Lindon, a
1980 law school graduate.

A chart showing the lodestar figures computed
on the basis of these rates for Arnold & Porter attorneys
up to and including February 28, 1983, is attached as
Exhibit B hereto.

9.  I have caused an inquiry to be made and have
inquired into the billing rates of firms in Washington,
D.C., which are engaged in active litigation practice
in the federal courts.  A number of attorneys from such
firms have executed affidavits in this case giving

specific rate information, supporting and substantiating
the rates described in paragraph 8, <u>supra</u>, and
demonstrating that the requested rates are equal to
or below prevailing market rates in the community for
lawyers of similar skill and experience.  Those affidavits
are contained in Appendix II to this application.   In
addition, examination of the files and reports of cases
in the District of Columbia and elsewhere has disclosed
further substantial corroborative information as to
prevailing market rates in the District of Columbia
for complex federal litigation such as <u>Laffey</u>, and copies
of affidavits and excerpts from affidavits filed in
a number of such cases are summarized below and attached
as exhibits to this affidavit.  This is in accord with
the statement of the U.S. Court of Appeals in <u>National
Association of Concerned Veterans</u>, 675 F.2d 1319, 1326
(D.C. 1982) that:  "Evidence submitted by attorney fee
applicants in prior cases may also be relied on in
compiling an attorney fee application.  There is no
requirement that each attorney develop all of the evidence
for the hourly rate he seeks from scratch."

          10.  The examination I have caused to be conducted
shows that the standard hourly rates of many lawyers
in the District of Columbia, customarily billed and

collected, in complex federal litigation are $200 an
hour or more.

11. The standard hourly rates at Arnold & Porter,
customarily billed and collected, are equal to or in
excess of the rates requested here at the various levels
of experience of attorneys for which application is
made. I graduated from law school in the same year
as Mr. Gottesman and am somewhat junior to Messrs.
Bredhoff and Cohen at Bredhoff & Kaiser in year of
graduation from law school and admission to the Bar.
I became a partner at Arnold & Porter several years
after Mr. Gottesman became a partner in the firm which
is now Bredhoff & Kaiser. My current standard hourly
billing rate, applicable to all civil litigation matters
for fee-paying clients, is $200 an hour. Mr. Burt is
junior in year of graduation from law school and admission
to the Bar to Messrs. Weinberg and Petramalo of Bredhoff &
Kaiser. Mr. Burt's current standard hourly billing
rate is $160. Mr. Lindon's current standard hourly
billing rate is $95. During the entire time of my
representation of plaintiffs on the attorney fee issue,
to the best of my knowledge, all or virtually all of
my time in all the other civil cases in which I have
represented fee-paying clients has been billed at my

stated standard hourly rates.  Furthermore, to the best
of my knowledge all or virtually all of such time billed
to and paid by such fee-paying clients has been paid
at the stated standard hourly rates.  None of these
matters was handled on a contingent basis, and my standard
hourly rate does not include an allowance for the
contingent nature of any cases.  The same is true of
Messrs. Burt and Lindon.

12.  Most other lawyers at Arnold & Porter of
equivalent years of experience to myself and to the
senior members of the Bredhoff & Kaiser firm that I
have listed (Messrs. Gottesman, Bredhoff, and Cohen)
also bill and collect from fee-paying clients at current
standard rates of $200 or $190 an hour.  The current
standard billing rates at Arnold & Porter thus equal
or exceed the $175 and $150 an hour rates requested
for Messrs. Gottesman, Bredhoff and Cohen at their various
levels of experience during the Laffey case.

13.  Likewise, the current standard hourly rates
applicable at Arnold & Porter to partners of comparable
age and status to Messrs. Weinberg and Petramalo of
Bredhoff & Kaiser equal or exceed the $150, $125 and
$100 per hour rates requested for the services of those
attorneys at their various levels of experience during

the <u>Laffey</u> case.  Mr. Weinberg is a 1968 law school
graduate, a member of the D.C. Bar since 1969, and a
partner at Bredhoff & Kaiser since 1977.  Mr. Petramalo
is a 1969 law school graduate, became a member of the
D.C. Bar in that year, and has been a partner since
1978.  Arnold & Porter's standard hourly billing rate
for most partners in their 11th year after graduation
from law school is $150, and ordinarily increases
thereafter with increased experience.  The current
standard rate for most partners of Mr. Weinberg's and
Mr. Petramalo's years of experience is from $160 to
$170 an hour.  The current standard hourly rates at
Arnold & Porter exceed the $125 and $100 rates requested
at various levels of experience for J. Penny Clark,
a 1973 graduate admitted to partnership in 1981.  The
current standard hourly rate for most partners in the
10th year after graduation from law school is $145.

    14.  With respect to associates, Arnold & Porter's
current standard hourly billing rates likewise exceed
the rates requested here for associates Dennis Clark,
Jeremiah Collins, Mady Gilson, and James J. Brudney.
The current standard hourly rates for first-year
associates are $80, for fourth-year associates $105,
and for associates during the seventh year $125.  The

time of associates who graduated in 1976, the same year
as attorneys Collins and Gilson, is currently billed
at $125 an hour.  Thus the request of $75 an hour for
junior associates of Bredhoff & Kaiser who worked on
Laffey during their first three years and of $100 an
hour for senior associates who worked on the case during
their fourth through seventh years is below the current
standard hourly rate that Arnold & Porter charges for
the services of persons of equivalent experience.

15.  Compensation for the services of paralegals
and law clerks of Bredhoff & Kaiser is being requested
at the rate of $30 an hour.  Arnold & Porter's customary
hourly rates for paralegals are $40 an hour after they
have been at the firm for six months ($32 an hour prior
to that time) and $45 an hour for the time of law clerks.

16.  My examination and inquiry into the rates
charged to fee-paying clients by many other firms and
attorneys in Washington, D.C. engaged in complex
litigation in the federal courts, including employment
discrimination and other civil rights, antitrust,
securities, tax, environmental, and general litigation,
discloses rates consistent with the rates requested
here.  Appendix II contains numerous affidavits of
practitioners as to current rates in Washington, D.C.

- 12 -

These affidavits state that employment discrimination
cases are billed to fee-paying clients at the same
standard hourly rates as all other complex federal
litigation.  In addition to the other affidavits filed
with this application, I have set forth data derived
from affidavits and pleadings filed in other cases in
the paragraphs below, with attached exhibits.  It should
be noted that most of these affidavits were filed in
cases prior to 1983, and current rates may be even higher.

(a)  Thomas R. Ewald, admitted to practice in
1957, and Samuel Seymour, admitted to practice in 1962,
both Washington, D.C. practitioners, were awarded fees
for representing plaintiffs in a Title VII case at the
lodestar rate of $175 an hour on the basis of a specific
finding by the Court that this was a reasonable hourly
rate in Washington, D.C. for an experienced litigator
as of 1980.  Chrapliwy v. Uniroyal, Inc., 670 F.2d 760,
764, 768-69 (7th Cir. 1982).

(b)  In affidavits filed in other Title VII cases,
Jane McGrew, a member of the firm of Steptoe & Johnson,
Chartered, who graduated from law school in 1970, became
a partner in 1977, and has specialized in Title VII
work, states that she routinely bills fee-paying clients
at the rate of at least $160 an hour, including employment

discrimination work.  (Affidavits of Jane McGrew in
Chewning v. Duncan, U.S.D.C. D.C., Civil Action
No. 76-0334, and Kohne v. Imco Container Co., U.S.D.C.
for the Western District of Virginia, Civil Action No. 74-
C-110(H) attached as Exhibits C and D hereto.)

According to her affidavit, Ex. D, p. 4, the
standard hourly rates of other lawyers of Steptoe &
Johnson as of 1982 were as follows:

| Level of Seniority | Minimum Hourly Rate |
| --- | --- |
| 20 years or more | $170 |
| 9 to 20 years | $125 to $200 |
| 4 to 8 years | $ 95 to $125 |
| Less than 4 years | $ 70 to $ 95 |

According to Ms. McGrew, standard billing rates
in 1982 at Steptoe & Johnson for paralegal time were
$45 to $50 an hour.  (Id.)

(c)  This Court in Connors v. Drivers, Chauffeurs &
Helpers Local Union 639, Civ. Act. 82-1840, March 4,
1983, awarded the following rates to Steptoe & Johnson
lawyers, which it found to be the actual rates charged
by the firm during 1982:

J.D. Hutchinson, a 1968 law school
graduate -- $190 an hour.

- 14 -

P.J. Ondrasik, Jr., a 1975 law school
graduate -- $115 an hour.

A.B. Ianniello, a 1980 law school
graduate -- $80 an hour.

(d)  Roger Warin, who is a 1970 law school
graduate, became a partner in Steptoe & Johnson in 1978,
and has handled numerous employment discrimination and
other civil rights matters, states that in 1982 his
normal billing rate was $150 an hour.  (Affidavit of
Roger E. Warin, Bachman v. Miller, U.S.D.C. D.C., Civil
Action No. 76-0079, p. 3, Exhibit E hereto.)  He further
states that John R. Labovitz, a 1969 law school graduate
who became a partner at Steptoe & Johnson in 1979, also
had a normal billing rate in 1982 of $150 an hour.
(Id., p. 7)

(e)  Nathan Lewin, of Miller, Cassidy, Larocca &
Lewin, an experienced litigator who is a 1960 law school
graduate and frequently handles civil rights matters
in this and other courts, ordinarily charged fee-paying
clients in 1982 at the standard rate of $250 an hour
for his services.  (Affidavit of Jamie S. Gorelick,
National Public Radio v. Copyright Royalty Tribunal,
U.S. Court of Appeals for the D.C. Circuit, Docket
No. 80-2281, pp. 9-10, Exhibit F hereto.)

- 15 -

(f)  Partners of the Washington office of White &
Case have stated their hourly rates as of 1982 as follows:

    John W. Barnum, a 1957 law school graduate,
    $225;

    John J. McAvoy, a 1958 law school graduate,
    $210;

    Paul L. Friedman, a 1968 law school
    graduate, $180.

(In re AOV Industries, Inc., U.S. Bankruptcy Court for
the District of Columbia, Case No. 81-00617 et al.,
Fifth Application of White & Case for Interim Compensation
and Reimbursement of Expenses, December 15, 1982, p. 4,
Exhibit G hereto.)

(g)  David I. Shapiro of the firm of Dickstein,
Shapiro & Morin billed at the standard hourly rate of
$200 in 1981.  (Exhibit B to Affidavit of David I. Shapiro
in In re Ampicillin Antitrust Litigation, U.S.D.C. D.C.,
M.D.L. Docket No. 50 (Misc. 45-70), 526 F. Supp. 494
(D.D.C. 1981), Exhibit H hereto.)

(h)  Joseph D. Tydings, who became a partner
in the firm of Danzansky, Dickey, Tydings, Quint & Gordon
in 1971, is now a member of the firm of Finley, Kumble,
Wagner, Heine, Underberg, and Casey, and is an experienced
litigator, also billed at the rate of $200 an hour for

litigation services as far back as 1980.  (Affidavit of Joseph D. Tydings, <u>In re Corrugated Container Antitrust Litigation</u>, U.S.D.C. Southern District of Texas, M.D.L 310, Exhibit I hereto.)

    (i)  The standard billing rate to fee-paying clients for an experienced litigator at Covington & Burling, was at least $180 an hour in 1982.  (<u>Smith</u> v. <u>Pro-Football, Inc.</u>, U.S.D.C. D.C., Civ. Act. No. 1643-70, Tagliabue Affidavit, ¶ 8, cited in Memorandum of Estate of Stuart H. Johnson, Jr., in Support of Plaintiff's Motion for an Award of Attorney's Fees and Costs and in Response to Objections of Defendant National Football League, Sept. 9, 1982, pp. 28-29.)

    (j)  Timothy J. Waters of the firm of Peabody, Lambert & Meyers, who graduated from law school in 1968, became a partner in 1973, and is a litigator, had a standard billing rate of $150 an hour in antitrust litigation as of 1982.  (Affidavit of Timothy J. Waters, <u>Smith</u> v. <u>Pro-Football, Inc.</u>, <u>supra</u>, p. 3, Exhibit J hereto.)

    (k)  The time of Arthur F. Matthews, an experienced litigator at the firm of Wilmer, Cutler & Pickering, who graduated from law school and was admitted to the

D.C. Bar in 1962, was billed at $185 an hour in 1982.
The time of his partner, Stephen F. Black, who graduated
in 1968, was a law school classmate of Robert M. Weinberg
Bredhoff & Kaiser, and was admitted to the D.C. Bar
in 1969, is billed at the rate of $170 an hour.  The
time of Stephen P. Doyle, a 1976 graduate, is billed
at $120 an hour; the time of associates who graduated
in 1979, Richard Goodstein, Kathy B. Weinman, and Robert
M. Pozin, is billed at $105 an hour.  (See the submission
of Wilmer, Cutler & Pickering in the OPM Leasing Services
fraud investigation, Reorganization No. 81-B-10533,
U.S. Bankruptcy Court for the Southern District of New
York, attached as Exhibit K hereto.)

(1)  Bradley G. McDonald, a 1961 law school
graduate, stated in an affidavit in the D.C. professional
tax case, Superior Court of the District of Columbia,
Tax Division, Docket No. 2362, Bishop v. District of
Columbia, that he had a standard billing rate, as of
1980, of $150 an hour (Affidavit of Bradley G. McDonald,
p. 3, Exhibit L hereto); his practice included Title VII
cases as well as other forms of complex federal court
litigation.  Other regular billing rates set forth in
the affidavits filed in that case include John M. Bixler
of Miller & Chevalier at $160 an hour as of 1980, and

$200 for other senior partners of Miller & Chevalier, a firm specializing in tax matters.  (Bishop v. District of Columbia, supra, Affidavit of John M. Bixler, Exhibit M, pp. 3-4.)

(m)  Arthur W. Leibold, Jr., a partner in the Washington office of Dechert Price and Rhoads, states that as of 1982 his rate was $195 an hour and several of his partners and senior partners had rates of $200 and $225 an hour.  (Affidavit of Arthur W. Leibold, In re National Student Marketing Litigation, U.S.D.C. D.C., M.D.L. Docket No. 105, Exhibit N hereto.)

(n)  Gilbert Hahn, Jr., a senior litigator formerly at the firm of Wolf, Amram and Hahn, stated in his submission in Metropolitan Washington Coalition for Clean Air v. District of Columbia, Civil Action Nos. 1424-73 and 1844-73 (D.D.C. 1981) that his hourly rate as far back as 1980 was $175.  He was awarded fees by this Court at that lodestar rate.

(o)  Eldon V.C. Greenberg, formerly of the Washington office of Tuttle & Taylor, who is a 1969 law school graduate and has handled substantial environmental litigation, had a standard billing rate

- 19 -

of $155 an hour to fee-paying clients as of 1982.

(Declaration of Eldon V.C. Greenberg, National Wildlife

Federation v. Watt, U.S.D.C., D.C. Civil Action No.

82-0320, p. 1, Exhibit O hereto.)

Daniel A. Rezneck

Subscribed and sworn to before

me this  7 day of ⎜⎜⎜⎟⎟ , 1983.

Notary Public

My Commission Expires:

## EXHIBIT 1

### EVIDENCE OF HOURLY RATES CHARGED BY ATTORNEYS
### FOR COMPLEX LITIGATION IN THE DISTRICT OF COLUMBIA

Lodestar Rates Requested for
Bredhoff & Kaiser and Arnold & Porter Attorneys

$175 an hour for very experienced federal court
litigators, e.g., lawyers in their twentieth year or
more after graduation from law school;

$150 an hour for experienced litigators, e.g., lawyers
in their eleventh through nineteenth years after
graduation from law school;

$125 an hour for experienced litigators in their eighth
through tenth years after graduation from law school;

$100 an hour for senior associates in their fourth through
seventh years after graduation from law school;

$75 an hour for junior associates in their first through
third years after graduation from law school.

| Law Firm and/or Attorney | Year of Graduation | Hourly Rate |
|---|---|---|
| ARNOLD & PORTER | | |
| Daniel A. Rezneck[1] | 1959 | $200 (current) $190 (in 1982) |
| Other attorneys of equivalent experience to Mr. Rezneck[2] | | $190-200 (current) |
| James A. Dobkin[3] | 1964 | $180 |
| Jeffrey A. Burt[1] | 1970 | $160 (current) $150 (in 1982) |
| Partner in the 11th year after graduation[4] | | $150 (current) |

Attachment W

- 2 -

| Law Firm and/or Attorney | Year of Graduation | Hourly Rate |
|---|---|---|
| Partner in the 10th year after graduation[6] | | $145 (current) |
| Seventh-year associate[6] | | $125 (current) |
| Fourth-year associate[6] | | $105 (current) |
| Timothy J. Lindon[1] | 1980 | $ 95 (current) |
| First-year associate[6] | | $ 80 (current) |
| BARNETT & ALAGIA | | |
| William A. Carey[6] | 1957 | $150 (current) |
| CAPLIN & DRYSDALE | | |
| Irving Salem[7] | 1960 | $200 (current) |
| Cono R. Namorato[7] | 1968 | $185 (current) |
| Peter Van N. Lockwood[7] | 1966 | $175 (current) |
| Robert C. Pozen[7] | 1972 | $150 (current) |
| Partners[7] | | $120-300 (current) |
| Associates[7] | | $ 75-105 (current) |
| COVINGTON & BURLING | | |
| Experienced partner[8] | 1947 | $180 minimum (in 1982) |
| DECHERT PRICE & RHOADS | | |
| Senior partners[9] | | $200-225 (in 1982) |
| Arthur W. Leibold[9] | 1956 | $195 (in 1982) |
| Senior associate[9] | | $110 (in 1982) |
| Associate[9] | | $100 (in 1982) |

- 3 -

| Law Firm and/or Attorney | Year of Graduation | Hourly Rate |
|---|---|---|
| DICKSTEIN, SHAPIRO & MORIN | | |
| Senior partner[10] | | $225-250 (current) |
| Experienced partners[10] | | $150-200 (current) |
| David I. Shapiro[11] | 1949 | $200 (in 1981) |
| James vanRoden Springer[10] | 1962 | $170 (current) |
| EWALD, THOMAS R. | 1957 | |
| Experienced D.C. litigator | | |
| Fee award by Court[12] | | $175 (in 1980) |
| FINLEY, KUMBLE, WAGNER, HEINE, UNDERBERG & CASEY | | |
| Joseph D. Tydings[13] | 1953 | $200 (in 1980) |
| HAHN, GILBERT, JR. | 1948 | |
| Fee award by Court[14] | | $175 (in 1980) |
| HOGAN & HARTSON | | |
| Attorneys[15] | | Firm's 1983 rates are equivalent to requested rates* |
| KAYE, SCHOLER, FIERMAN, HAYS & HANDLER | | |
| Kenneth R. Feinberg[16] | 1970 | $200 (current) |
| McDONALD, BRADLEY G.[17] | 1961 | $150 (in 1980) |
| MILLER, CASSIDY, LARROCA & LEWIN | | |
| Nathan Lewin[18] | 1960 | $250 (in 1982) |
| Senior partners[19] | | $175-250 (current) |

---

\* Requested rates are listed at the head of this table.

- 4 -

| Law Firm and/or Attorney | Year of Graduation | Hourly Rate |
|---|---|---|
| Jamie Gorelick[19] | 1975 | $100-125 (current) |
| Associates[19] | | $ 70-110 (current) |
| **MILLER & CHEVALIER** | | |
| Senior partner[20] | | $200 (in 1980) |
| John M. Bixler[20] | 1954 | $160 (in 1980) |
| Associates[20] | | $ 90 (in 1980) |
| **NUSSBAUM, OWEN & WEBSTER** | | |
| David N. Webster[21] | 1958 | $180 (current) |
| "...experienced litigators for handling complex federal civil litigation..."[21] | | $135-185 (current) |
| **PEABODY, LAMBERT & MEYERS** | | |
| Partners[22] | | $130-180 (current) |
| Charles T. Duncan[22] | 1950 | $170 (current) |
| Timothy Waters[22] | 1968 | $150 (in 1982) |
| Senior associates[22] | | $100 (in 1982) |
| Associates[22] | | $ 75-100 (current) |
| **SEYMOUR, SAMUEL** | 1962 | |
| Experienced D.C. litigator Fee award by Court[12] | | $175 (in 1980) |
| **STEPTOE & JOHNSON** | | |
| J.D. Hutchinson[25] | 1968 | $190 (in 1982) |

- 5 -

| Law Firm and/or Attorney | Year of Graduation | Hourly Rate |
|---|---|---|
| Attorney with 20 or more years' experience[24] | | $170 (current minimum) |
| Attorney with 9 to 20 years' experience[24] | | $125-200 (current minimum) |
| Jane McGrew[24] | 1970 | at least $160 (current) |
| Roger E. Warin[26] | 1970 | $150 (in 1982) |
| John R. Labovitz[26] | 1969 | $150 (in 1982) |
| Associate with 4 to 8 years' seniority[26] | | $ 95-125 (current minimum) |
| P.J. Ondrasik[25] | 1975 | $115 (in 1982) |
| Associate with less than 4 years' seniority[24] | | $ 70-90 (current minimum) |
| A.B. Ianniello[25] | 1980 | $ 80 (in 1982) |
| TUTTLE & TAYLOR Eldon Greenberg[27] | 1969 | $155 (in 1982) |
| WHITE & CASE John W. Barnum[28] | 1957 | $225 (in 1982) |
| John J. McAvoy[28] | 1958 | $210 (in 1982) |
| Paul L. Friedman[28] | 1968 | $180 (in 1982) |
| Senior Associate[28] | | $120-130 (in 1982) |
| Junior Associate[28] | | $ 65 (in 1982) |

- 6 -

| Law Firm and/or Attorney | Year of Graduation | Hourly Rate |
|---|---|---|
| **WILLIAMS & CONNOLLY** Partners & Associates[28] | | Firm's current rates are "at least equivalent" to the requested rates* |
| **WILMER, CUTLER & PICKERING** James Robertson[30] | 1965 | $185 (current) |
| Arthur F. Matthews[31] | 1962 | $185 (in 1982) |
| Steven F. Black[31] | 1968 | $170 (in 1982) |
| Stephen P. Doyle[31] | 1976 | $120 (in 1982) |
| Associates[31] | | $105 (in 1982) |
| Partners and associates[31] | | Firm's current rates are "at least equal to" requested rates* |

- 7 -

## Paralegals and Law Clerks

**Lodestar Rate Requested for Bredhoff & Kaiser
and Arnold & Porter Law Clerks and Paralegals:**

$30 an hour

| Law Firm | Rate |
|---|---|
| ARNOLD & PORTER | |
| paralegals[12] | $32 in first six months, $40 after six months' experience (current) |
| law clerks[12] | $45 (current) |
| CAPLIN & DRYSDALE | |
| paralegals[7] | $35-40 (current) |
| law clerks[7] | $50 (current) |
| DECHERT PRICE & RHOADS | |
| paralegals[8] | $32 (in 1982) |
| DICKSTEIN, SHAPIRO & MORIN | |
| paralegals[10] | $40 (current) |
| HOGAN & HARTSON law clerks and paralegals[15] | Current firm rates are equivalent to requested rate* |
| NUSSBAUM, OWEN & WEBSTER paralegals and law clerks[21] | Requested rate* is in accordance with current prevailing rates |

---

\*  Requested rate is listed at the head of this table.

- 8 -

| Law Firm | Rate |
|----------|------|
| PEABODY, LAMBERT & MEYERS<br>    paralegals[22] | $55 (current) |
| STEPTOE & JOHNSON<br>    paralegals[26] | $45-50 (in 1982) |
| WHITE & CASE<br>    paralegals[28] | $35 (in 1982) |
| WILLIAMS & CONNOLLY<br>    paralegals[29] | Firms' current rate<br>is "at least equiva-<br>lent" to the requested<br>rate* |
| WILMER, CUTLER & PICKERING<br>    paralegals[31] | $48 (in 1982) |
|     law clerks[30] | Firms' current rate<br>is "at least equal<br>to" the requested<br>rate* |

- 9 -

## Endnotes

1.    Affidavit of Daniel A. Rezneck, ¶ 11.

2.    Affidavit of Daniel A. Rezneck, ¶ 12.

3.    Affidavit of James A. Dobkin, ¶ 5.

4.    Affidavit of Daniel A. Rezneck, ¶ 13.

5.    Affidavit of Daniel A. Rezneck, ¶ 14.

6.    Affidavit of William A. Carey, ¶ 8.

7.    Affidavit of Peter Van N. Lockwood, ¶ 5.

8.    Affidavit of Daniel A. Rezneck, ¶ 16(i).

9.    Affidavit of Daniel A. Rezneck, ¶ 16(m); Exhibit N, p.2.

10.   Affidavit of James vanRoden Springer, ¶¶ 2-3.

11.   Affidavit of Daniel A. Rezneck, ¶ 16(g); Exhibit H.

12.   Affidavit of Daniel A. Rezneck, ¶ 16(a).

13.   Affidavit of Daniel A. Rezneck, ¶ 16(h); Exhibit I.

14.   Affidavit of Daniel A. Rezneck, ¶ 16(n).

15.   Affidavit of David S. Tatel, ¶ 15.

16.   Affidavit of Kenneth R. Feinberg, ¶ 6.

17.   Affidavit of Daniel A. Rezneck, ¶ 16(l); Exhibit L, ¶ 3.

18.   Affidavit of Daniel A. Rezneck, ¶ 16(e); Exhibit F, ¶ 16.

19.   Affidavit of Jamie S. Gorelick, ¶ 5.

20.   Affidavit of Daniel A. Rezneck, ¶ 16(l); Exhibit M, ¶¶ 3-5.

21.   Affidavit of David N. Webster, ¶ 8.

- - 10 -

22.    Affidavit of Charles T. Duncan, ¶ 11.

23.    Affidavit of Daniel A. Rezneck, ¶ 16(j); Exhibit J,
       ¶ 5.

24.    Affidavit of Daniel A. Rezneck, ¶ 16(b); Exhibit C,
       ¶¶ 6-7; Exhibit D, ¶ 9.

25.    Affidavit of Daniel A. Rezneck, ¶ 16(c).

26.    Affidavit of Daniel A. Rezneck, ¶ 16(d); Exhibit E,
       ¶ 4, ¶ 8, ¶ 11.

27.    Affidavit of Daniel A. Rezneck, ¶ 16(o); Exhibit O,
       ¶ 2.

28.    Affidavit of Daniel A. Rezneck, ¶ 16(f); Exhibit G,
       ¶ 6.

29.    Affidavit of Robert L. Weinberg, ¶ 6.

30.    Affidavit of James Robertson, ¶ 4, ¶ 8.

31.    Affidavit of Daniel A. Rezneck, ¶ 16(k); Exhibit K.

32.    Affidavit of Daniel A. Rezneck, ¶ 15.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CATHERINE A. BRODERICK,
    Plaintiff,

        v.                          Civil Action No.
                                    86-1834  (Pratt, J.)
DAVID S. RUDER, Chairman,
    U.S. Securities &
    Exchange Commission,
    Defendant.

---

## DECLARATION OF JOSEPH A. YABLONSKI

JOSEPH A. YABLONSKI declares and states:

1. Since October 1975, I have been a partner in the law firm of Yablonski, Both & Edelman. I received my LL.B. degree from the University of Pittsburgh in 1965. My firm is engaged in a general litigation practice and has been involved extensively in federal court litigation involving issues of labor law and employment relations and also in litigation under numerous federal statutes which provide for recovery of fees by prevailing parties.

2. I conducted the attorney fee litigation which resulted in the Court of Appeals' en banc decision in Save Our Cumberland Mountains v. Hodel, 857 F.2d 1216 (D.C. Cir. 1988). I strongly agreed with the Court's observation that "the most desirable result" of the litigation would be "development of a . . . schedule of prevailing community rates for . . . relevant years", id. at 1525, in order to simplify fee determination in future cases.

3. With a view to pursuing settlement of the fee issues in SOCM and to realization of the hope expressed by the Court, I undertook to prepare a matrix of prevailing District of Columbia rates, a copy of which is attached. To the best of my knowledge, the rates appearing on the schedule accurately reflect the prevailing rates in effect in this jurisdiction during the time periods indicated. The fee issues in the SOCM litigation were finally settled, at hourly rates extremely close to those reflected on the matrix, with the Government agreeing that I should be paid at rates of $ 245 to $ 255 per hour for work performed in 1988, respectively, for the periods prior to June 1, 1988 and afterward. The Government also agreed that time of our associate John Colwell, a 1985 Yale Law School Graduate, should be compensated at the rates of $ 100 and $ 110 per hour.

4. In preparing the matrix, I used one-year periods running from June 1 to May 31 to correspond with the typical practice under which attorneys commonly begin practice shortly after law school graduation in June. Based on the approving reference of the Court in SOCM to the matrix developed in connection with Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), rev'd in part, 746 F.2d 4 (D.C. Cir. 1984), I used the same gradations of experience levels which Judge Robinson had used there. After review of the massive material submitted regarding prevailing rates in the Laffey case, I found that the material had been current as of the year 1981-82.

5. In preparing the new matrix envisioned by the SOCM en

2

banc decision,I extrapolated backward to the year 1980-81 and forward to the year 1988-89 with the knowledge that prevailing rates charged by attorneys in this market have regularly increased throughout these years. I discussed this matter extensively with Daniel Rezneck who developed the original Laffey matrix in the course of his work on the fee litigation in that case. Mr. Rezneck's view, which he has expressed in his affidavit in Laffey and which I share, is that the hourly rates stated in the Laffey matrix were quite conservative and, in fact, understated prevailing rates then in effect. I have also reviewed Mr. Rezneck's subsequent affidavits such as in the matters of In re Meese, No. 84-1 (D.C. Cir.)(Indep. Counsel Div.) and In re Donovan, No. 85-1 (D.C. Cir.)(Indep. Counsel Div.) where he described changes in prevailing rates which had occurred since he prepared the Laffey matrix. I also reviewed the voluminous more recent information regarding hourly rates which was submitted by the firm of Steptoe & Johnson regarding some 20 firms who had participated in the remedial stages of McKenzie v. Kennickell, C.A. No. 73-974 (D.D.C.). During the past several years, because of my involvement in the SOCM case and other fee litigation, I have kept abreast of statutory attorney fee developments in this jurisdiction particularly as they have borne on the question of prevailing rates. In the course of preparing the matrix, I spoke with attorneys from various firms including Dow, Lohnes & Albertson; Arnold & Porter; Galloway and Greenberg; Sachs, Greenebaum & Tayler; Baker & Botts; Morgan, Louis &

3

Bockius; and Lee, Toomey & Kent.

6. Additionally, in preparing the matrix, I compared the rates I had found with the rates set forth in two broad-ranging surveys of hourly rates published in the National Law Journal in November 1987 and November 1988. The information reflected in these surveys supported the correctness of the rates I had determined for the more recent years.

7. Upon completing the matrix, I shared copies with various attorneys who have been active in statutory fee litigation in this jurisdiction including Mr. Rezneck of Arnold & Porter; Roger Warin of Steptoe & Johnson who has handled the fee litigation in the McKenzie and Thompson cases involving the Government Printing Office; Richard T. Seymour of the Lawyers Committee for Civil Rights Under Law; Roderic V.O. Boggs of the Washington Lawyers Committee for Civil Rights Under Law; and attorneys in Bierbower & Bierbower; Zuckerman, Spaeder, Goldstein, Taylor & Kolker; and several other major firms in this City. In our discussions, none of these individuals have indicated anything other than agreement with the rate information presented.

8. Incident to settlement of the SOCM case, a reference to the matrix appeared in the Legal Times. Subsequently various attorneys have requested copies of the matrix in connection with pending fee issues. Among the attorneys to whom I provided the matrix was Lawrence Speiser who submitted in connection with a fee claim in Trout v. Ball. The fee decision by Judge Greene

confirmed the accuracy of the matrix in upholding the hourly rate sought by Mr. Speiser for his time in that matter. Trout v. Ball, 705 F. Supp. 705, 709 n.10 (D.D.C. 1989).

9. I believe that the rate information set forth on the matrix states accurately, and indeed conservatively, prevailing rates in effect in the years described.

I declare under penalty of perjury that the foregoing is true and correct.

_____
JOSEPH A. YABLONSKI

Executed on:   Nov 2, 1959

## LAFFEY MATRIX

### YEARS 1/
(Houry Rates)

| EXPERIENCE OF ATTORNEY | 1980 -81 | 1981 -82 | 1982 -83 | 1983 -84 | 1984 -85 | 1985 -86 | 1986 -87 | 1987 -88 | 198 |
|---|---|---|---|---|---|---|---|---|---|
| ry experienced federal litigators (20+ years): | $165 | $175 | $190 | $200 | $210 | $225 | $240 | $255 | $26! |
| perienced federal litigators 1th thru 19th years): | $140 | $150 | $160 | $170 | $180 | $190 | $200 | $210 | $220 |
| perienced litigator th thru 10th years): | $115 | $125 | $135 | $145 | $155 | $165 | $175 | $185 | $195 |
| nior associates th thru 7th years): | $ 95 | $100 | $105 | $110 | $115 | $120 | $125 | $130 | $135 |
| nior associates at thru 3rd years): | $ 70 | $ 75 | $ 80 | $ 85 | $ 90 | $ 95 | $100 | $105 | $110 |
| ralegals/Law Clerks: | $ 30 | $ 35 | $ 40 | $ 45 | $ 50 | $ 55 | $ 55 | $ 60 | $ |

June 1 - May 31

Adjusted Laffey Matrix

| Year | | Adjustment Factor | Paralegal/ Law Clerk | Years Out of Law School | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
| **6/1/16** | **5/31/17** | **1.0369** | **187** | **343** | **421** | **608** | **685** | **826** |
| 6/1/15 | 5/31/16 | 1.0089 | 180 | 331 | 406 | 586 | 661 | 796 |
| 6/1/14 | 5/31/15 | 1.0235 | 179 | 328 | 402 | 581 | 655 | 789 |
| 6/1/13 | 5/31/14 | 1.0244 | 175 | 320 | 393 | 567 | 640 | 771 |
| 6/1/12 | 5/31/13 | 1.0258 | 170 | 312 | 383 | 554 | 625 | 753 |
| 6/1/11 | 5/31/12 | 1.0352 | 166 | 305 | 374 | 540 | 609 | 734 |
| 6/1/10 | 5/31/11 | 1.0337 | 160 | 294 | 361 | 522 | 588 | 709 |
| 6/1/09 | 5/31/10 | 1.0220 | 155 | 285 | 349 | 505 | 569 | 686 |
| 6/1/08 | 5/31/09 | 1.0399 | 152 | 279 | 342 | 494 | 557 | 671 |
| 6/1/07 | 5/31/08 | 1.0516 | 146 | 268 | 329 | 475 | 536 | 645 |
| 6/1/06 | 5/31/07 | 1.0256 | 139 | 255 | 313 | 451 | 509 | 614 |
| 6/1/05 | 5/31/06 | 1.0427 | 135 | 248 | 305 | 440 | 497 | 598 |
| 6/1/04 | 5/31/05 | 1.0455 | 130 | 238 | 292 | 422 | 476 | 574 |
| 6/1/03 | 5/31/04 | 1.0507 | 124 | 228 | 280 | 404 | 456 | 549 |
| 6/1/02 | 5/31/03 | 1.0727 | 118 | 217 | 266 | 384 | 434 | 522 |
| 6/1/01 | 5/31/02 | 1.0407 | 110 | 202 | 248 | 358 | 404 | 487 |
| 6/1/00 | 5/31/01 | 1.0529 | 106 | 194 | 238 | 344 | 388 | 468 |
| 6/1/99 | 5/31/00 | 1.0491 | 101 | 184 | 226 | 327 | 369 | 444 |
| 6/1/98 | 5/31/99 | 1.0439 | 96 | 176 | 216 | 312 | 352 | 424 |
| 6/1/97 | 5/31/98 | 1.0419 | 92 | 168 | 207 | 299 | 337 | 406 |
| 6/1/96 | 5/31/97 | 1.0396 | 88 | 162 | 198 | 287 | 323 | 389 |
| 6/1/95 | 5/31/96 | 1.0320 | 85 | 155 | 191 | 276 | 311 | 375 |
| 6/1/94 | 5/31/95 | 1.0237 | 82 | 151 | 185 | 267 | 301 | 363 |
| 6/1/93 | 5/31/94 | 1.0552 | 80 | 147 | 181 | 261 | 294 | 355 |
| 6/1/92 | 5/31/93 | 1.0511 | 76 | 139 | 171 | 247 | 279 | 336 |
| 6/1/91 | 5/30/92 | 1.0445 | 72 | 133 | 163 | 235 | 265 | 320 |
| 6/1/90 | 5/31/91 | 1.0794 | 69 | 127 | 156 | 225 | 254 | 306 |
| 6/1/89 | 5/31/90 | 1.0700 | 64 | 118 | 144 | 209 | 235 | 284 |
| 6/1/88 | 5/31/89 | | 60 | 110 | 135 | 195 | 220 | 265 |

| Exhibit 4 | Comparison: LSI-PPI adjustments and OL-PPI-OL adjustments | | | | | |
|---|---|---|---|---|---|---|
| | | | | LSI-OL | | |
| | | LSI | | Adjustment | | PP!-OL |
| | | Adjustment | | Difference | | Adjustment |
| | | | | | | |
| | | | | | | |
| 6/1/16 | 5/31/17 | 1.0369 | | 0.0194 | | 1.0175 |
| 6/1/15 | 5/31/16 | 1.0089 | | -0.0214 | | 1.0303 |
| 6/1/14 | 5/31/15 | 1.0235 | | -0.0105 | | 1.0340 |
| 6/1/13 | 5/31/14 | 1.0244 | | -0.0035 | | 1.0279 |
| 6/1/12 | 5/31/13 | 1.0258 | | -0.0017 | | 1.0275 |
| 6/1/11 | 5/31/12 | 1.0352 | | -0.0027 | | 1.0379 |
| 6/1/10 | 5/31/11 | 1.0337 | | 0.0024 | | 1.0313 |
| 6/1/09 | 5/31/10 | 1.0220 | | -0.0103 | | 1.0323 |
| 6/1/08 | 5/31/09 | 1.0399 | | -0.0103 | | 1.0502 |
| 6/1/07 | 5/31/08 | 1.0516 | | -0.0078 | | 1.0594 |
| 6/1/06 | 5/31/07 | 1.0256 | | -0.0214 | | 1.0470 |
| 6/1/05 | 5/31/06 | 1.0427 | | -0.0066 | | 1.0493 |
| 6/1/04 | 5/31/05 | 1.0455 | | -0.0064 | | 1.0519 |
| 6/1/03 | 5/31/04 | 1.0507 | | 0.0194 | | 1.0313 |
| 6/1/02 | 5/31/03 | 1.0727 | | 0.0413 | | 1.0314 |
| 6/1/01 | 5/31/02 | 1.0407 | | -0.0111 | | 1.0518 |
| 6/1/00 | 5/31/01 | 1.0529 | | 0.0225 | | 1.0304 |
| 6/1/99 | 5/31/00 | 1.0491 | | 0.0246 | | 1.0245 |
| 6/1/98 | 5/31/99 | 1.0439 | | 0.0057 | | 1.0382 |
| | | | | | | |
| Sources: | LSI from BLS, Consumer Price Index, legal service index | | | | | |
| | PPI-OL from BLS, Producers Price Index | | | | | |
| | | | | | | |

Exhibit 5.   Comparison: LSI-*Laffey* and USAO hourly billing rates by years of experience for 2016-2017.

| | LSI-*Laffey* | USAO | Difference |
|---|---|---|---|
| | *2016-17* | *2016-17* | |
| years of experience | Rate $/hr. | | |
| 20+ | 826 | 543-581 | 245-283 |
| 11-19 | 685 | 465-516 | 169-220 |
| 8-10 | 608 | 395 | 213 |
| 4-7 | 421 | 332-339 | 82-89 |
| 1-3 | 343 | 291-322 | 21-52 |
| paralegal | 187 | 157 | 30 |
| Sources: | Exhibit 3 | USAO website | |
| | | https://www.justice.gov/usao-dc/file/796471/download | |

Exhibit 6     Comparison Market w/ LSI-Laffey w/USAO

| Timekeeper | Years from law school yrs. | 2016 Market Rate $ | *LSI-Laffey* 2016-2017 $ | Difference $/hr. | USAO low | USAO high | USAO 2016-2017 | Difference $/hr. |
|---|---|---|---|---|---|---|---|---|
| Abeles | 20 | 755 | 826 | 71 | 543 | 581 | 581 | -174 |
| Albin-Riley | 20 | 855 | 826 | -29 | | | 581 | -274 |
| Hearne | 20 | 819 | 826 | 7 | | | 581 | -238 |
| O'Brien | 20 | 800 | 826 | 26 | | | 581 | -219 |
| Davis | 17 | 490 | 685 | 195 | 455 | 510 | 510 | 20 |
| Largent | 11 | 550 | 685 | 135 | 455 | 510 | 510 | -40 |
| Brinton | 10 | 550 | 608 | 58 | | | 395 | -155 |
| Hollander | 9 | 595 | 608 | 13 | 332 | 339 | 339 | -256 |
| Total | | 5414 | 5890 | 476  8.8% | | | 4078 | -1336  -24.7% |

Laffey labor categories are broader than USAO labor categories
So for each Laffey labor category there is a range of USAO values
When this occurs I use the highest USAO value
This procedure narrows the difference between the market rate and the USAO rate