# EXHIBIT 5

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| DOROTHY L. BIERY, ET AL., AND <br> JERRAMY AND ERIN PANKRATZ, ET AL. | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 07-693L and 07-675L <br> CONSOLIDATED |
| THE UNITED STATES | ) <br> ) | |
| Defendant. | ) <br> ) | |

## **DECLARATION OF DR. LAURA A. MALOWANE**

I, Laura A. Malowane, declare as follows:

1. I am a Vice President of Economists Incorporated, an economic consulting firm in Washington, D.C. I have been employed at Economists Incorporated since 1998. Prior to that I was an economic consultant for Princeton Economics Group and a lecturer in Economics and Statistics at Princeton University, both located in Princeton, NJ. I have testified about economic and statistical issues by declaration, at deposition, before administrative bodies and at trial. I have extensive experience in analyzing and testifying on issues related to the awarding of attorneys' fees.

2. I received my Ph.D. in Economics from Princeton University in 1998 where my areas of specialization were microeconomics and industrial organization. I also earned a Masters degree in Economics from Princeton University in 1995, LL.B. and M.B.A. degrees from York University in 1991, and a Bachelors degree in Economics from York University in 1987. A copy of my curriculum vitae is attached as Appendix 1.

3. I have been asked by plaintiffs' attorneys to provide my opinion on what is the relevant market for determining attorneys' fees in this matter, and whether the billing rates of plaintiffs' attorneys are reasonable given current market rates.

4. In my opinion the relevant market for the legal services at issue in this case is one that is nationwide. It is also my opinion that the plaintiffs' attorneys' billing rates are reasonable and competitive with market rates.

5. In formulating my opinions I have reviewed, among other things, the First Amended Complaint, the Opinion dated June 9, 2011, and publicly available data. A full list of the materials I have reviewed is attached as Appendix 2. I reserve the right to revise my opinion based on additional information that is made available to me.

**BACKGROUND**

6. Plaintiffs in this consolidated case are fourteen Kansas landowners who own fee interests in land that was previously encumbered by right-of-ways of the Burlington Northern Santa Fe Railway. In their Complaint, plaintiffs contend that the government's authorization of recreational trails with the now non-operating railroad corridors has prevented the expiration of the railroad easements that would have otherwise been abandoned. On June 9, 2011, plaintiffs' motions for summary judgment were granted. My understanding is that because plaintiffs' prevailed in this matter, they are owed reimbursement of fees and costs, including attorneys' fees.

7. Plaintiffs' attorneys all work at the law firm of Arent Fox, a large multi-practice firm with offices in Washington, DC, New York, NY and Los Angeles, CA. Some of plaintiffs' attorneys previously worked for Lathrop & Gage, another large firm with eleven offices nationwide. In 2010, Arent Fox and Lathrop & Gage were the 135th and 150th largest firms in the country, respectively.[1] Attorneys on this matter come from offices in St. Louis, Kansas City, New York, Los Angeles and Washington, DC.

**ANALYSIS**

**1) The Relevant Market for Legal Services**

8. It is standard practice for attorneys to charge hourly rates for their services. An attorney's individual hourly rate depends upon, among other things, the area of law in which they

---

[1] The NLJ 250 Annual Survey of the Nation's Largest Law Firms, The National Law Journal & Legal Times, April 25, 2011.

practice. This is because there are specific components of supply and demand that may be unique to each area of law.

9. For example, the demand and supply for basic, consumer oriented legal services tend to be regional in nature. This is due to the importance of local rules as well as the convenience of the client in these areas of the law. For instance, an individual seeking legal assistance for a traffic violation or an uncontested divorce will most commonly seek a local attorney. There is no reason to believe that an attorney in a city such as Chicago would (or even could) provide these types of services to an individual in Los Angeles, or that an individual consumer in Los Angeles would seek an out-of-state attorney for such personal services. Moreover, the specific components necessary to provide a basic, legal service may differ by region. A no-fault divorce may require different attorney time and expense commitments in one region versus another because of local laws. Thus a fee charged for such a service may be different by locality simply because the services required are different.

10. Because of the regional nature of personal legal services as well as differences in local legal requirements, attorney fees for these types of services are unlikely to be uniform nationwide. In such matters it would be appropriate to look at the specific geographic location(s) of the attorney and consumer when determining appropriate attorney fees.

11. Other areas of the law, such as complex federal litigation, are broader in geographic scope both from a demand and supply perspective. For such matters legal services can be provided by certain specialized attorneys regardless of their location within the US. Knowledge of regional rules and everyday proximity to a client or specific courthouse are not as important, especially if the attorney is part of a firm with offices and attorneys in multiple locations. Similarly, clients seeking to employ the services of such attorneys can and will look outside their immediate region for the attorneys that best suit their needs.

12. The matter at hand involves the Kansas property of fourteen plaintiffs. The attorneys providing their legal services to plaintiffs are from two of the largest law firms in the country and are located in multiple regions throughout the United States. The relevant areas of law in this matter are derived from national legislation including The National Trails System Act Amendments of 1983, the Tucker Act, and The Uniform Relocation

Assistance and Real Property Acquisitions Policies Act. The court with jurisdiction over the matter is the Court of Federal Claims located in Washington, DC.

13. Although the plaintiffs in this matter are located in Kansas, the relevant legislation is national in scope and the demand for legal services related to such legislation can come from individuals and companies anywhere in the country. The supply of these legal services, as evidenced by the geographic diversity of the attorneys that have worked on the matter, come from lawyers who have specific skills and expertise but not necessarily specific office locations. For these reasons it is not appropriate in this matter to look at the specific geographic region of the clients to determine legal fees. Instead a broader market, one that is nationwide, should be used for such purposes.

**2) Attorney Rates**

14. In a competitive market the price (or market rate) is the lowest price that a firm can charge while not suffering economic losses. If a firm chooses to charge more than this rate, it will lose customers as competitors can and will charge less. If a firm chooses to charge less than this rate, it will lose money over the long run and will either have to raise its rates back in line with the market or go out of business. Ultimately firms in a competitive market will charge a market rate.

15. For complex federal litigation matters, such as in this case, the rate that plaintiffs' attorneys charge is their respective "national rates." A full list of these 2011 rates is attached as Appendix 3.[2] Below I examine whether these rates are in line with market rates charged by other attorneys from comparable firms. To do this I have reviewed The National Law Journal (NLJ) 2010 Billing Survey, the 2010 National Law Journal Billing Survey and Associate Class Billing Survey and The NLJ 250 Annual Survey of the Nation's Largest Law Firms (collectively the "survey"). This is a comprehensive survey that the NLJ performs annually. It encompasses billing rates of the 250 largest firms in the nation, who have offices dispersed throughout the country. Both Arent Fox and Lathrop & Gage are included in this survey.

---

[2] It is my understanding that there are other, minimal billers on this matter in addition to those listed in Appendix 3. My analysis is based on the individuals I understand to be the higher billers. I do not expect that the addition of the other, minimal billers to my analysis would alter my conclusions.

==================================================================
*Economists Incorporated*

4

16. For most law firms surveyed, the NLJ provides information on the firm's number of attorneys, principal or largest office location, and attorney billing rates. Partner and associate attorney billing rates are provided separately, with both the minimum and maximum rates for each group being shown.

17. To determine whether the national rates charged by Arent Fox and Lathrop & Gage are consistent with market rates, I used the NLJ survey to gather billing rate data of similar types of firms. I used two criteria to select comparable firms – size and principal office location. For size, I began with Arent Fox and Lathrop & Gage's NLJ size rankings in the US (135th and 150th, respectively) and then obtained rate data for firms with slightly higher and lower size rankings.[3] In total ten "Comparable by Size" firms were obtained for each of the two plaintiffs' attorneys firms.

18. For identifying comparables based on principal office location, I began with Arent Fox and Lathrop & Gage's NLJ principal location listing (Washington, DC and Kansas City, MO, respectively). The NLJ provides information on four other firms with principal offices in Washington, DC. I used these as "Comparable by Location" firms for Arent Fox. For Lathrop and Gage comparables, however, the NLJ does not provide data on a sufficient number of firms with principal office locations in Kansas City. Therefore, to obtain a meaningful group of comparables for Lathrop & Gage, I included firms with principal offices in St. Louis, MO. In total I identified six "Comparable by Location" firms for Lathrop & Gage. A full list of the comparable firms used for Arent Fox and Lathrop & Gage is attached as Appendix 4.

19. Table 1 below compares the national rates of plaintiffs' attorneys at Arent Fox and Lathrop & Gage with the range in billing rates of attorneys from Comparable by Size and Comparable by Location firms. The table reveals that the national rates of partners and associates from Arent Fox fall within the range of billing rates of attorneys from comparable firms. In particular, the table shows that Arent Fox partner national rates of between $705 and $706 are well within the range of rates from firms Comparable by Size ($195 to $950) and Comparable by Location ($300 to $990). Similarly, Arent Fox associate national rates of between $375 and $430 fall within the normal range of

---

[3] Specifically, I obtained data for the previous five higher ranked firms and the next five lower ranked firms for Arent Fox and for Lathrop & Gage. Since data were not available for all NLJ ranked firms, the ranking of each of the comparables chosen was not necessarily within + or – five rankings of the plaintiffs' attorneys firms.

================================================================
*Economists Incorporated*
5

associate rates from firms Comparable by Size ($140 to $565) and Comparable by Location ($185 to $550).

20. Table 1 also depicts the national rate of the one main attorney in this matter from Lathrop & Gage as well as rates from comparable firms. The attorney from Lathrop & Gage is "Of Counsel" and has 29 years of experience. Because of his significant years of experience, I compare his rate to that of partners of other firms. The table shows that the Lathrop & Gage Of Counsel national rate of $450 is within the range of partner rates from firms Comparable by Size ($180 to $975) and Comparable by Location ($230 to $804).[4]

| Table 1<br>Arent Fox and Lathrop & Gage<br>Billing Rates vs. Comparables | | | | | |
|---|---|---|---|---|---|
| | | Firms of Comparable Size | | Firms of Comparable Location | |
| **Attorney Type** | **National Rate** | **Minimum Rate** | **Maximum Rate** | **Minimum Rate** | **Maximum Rate** |
| Arent Fox Partner | $705 - $706 | $195 | $950 | $300 | $990 |
| Arent Fox Associate | $375 - $430 | $140 | $565 | $185 | $550 |
| Lathrop & Gage Of Counsel[1] | $450 | $180 | $975 | $230 | $804 |

**Notes:**
[1] Of Counsel rate is in comparison to partner rates
Arent Fox national rates are current (2011), while rates of comparable firms are as of 2010
**Source:**
2010 National Law Journal Billing Survey and Associate Class Billing Survey;
MSL - Biery-Pankratz Attorney Chart (2)

---

[4] Although not depicted in the table, the Of Counsel national rate is also within the normal range of associate rates from firms Comparable by Size ($140 to $575) and Comparable by Location ($150 to $550).

==================================================================
*Economists Incorporated*

6

21. In all cases, the national rates of plaintiffs' attorneys are in line with market rates.[5] It should be noted that these charts compare the 2011 national rates of plaintiffs' attorneys with the 2010 NLJ survey rates. If, as expected, the 2011 NLJ survey rates are higher than those in 2010, plaintiffs' attorneys' rates are even more competitive with market rates.

22. To be certain that no outliers (either very large or very small billing rates) were driving these conclusions I reran the same analysis after first eliminating the largest and smallest billing rates within each set of comparable firms. Once again in each case the national rates of plaintiffs' attorneys were well within the range of competing market rates.

23. As a final check, I compared the rates of individual associates of Arent Fox to rates of associates of similar years of experience at comparable firms.[6] The results of these comparisons are depicted in Table 2 below. In all cases the national rates of associates from Arent Fox are within or below the range of billing rates of associates with similar experience from firms Comparable by Size and Comparable by Location.

---

[5] The NLJ survey does not provide data on billing rates for paralegals. However, since the data reveal that Arent Fox and Lathrop & Gage attorney rates are in line with market rates, there is no reason to expect that the competitiveness of the paralegal rates from these firms would be any different.

[6] I use Arent Fox rates for this comparison because the main associates in this matter currently work at that firm.

| | | Firms of Comparable Size | | Firms of Comparable Location | |
|---|---|---|---|---|---|
| Years of Experience | Arent Fox National Rate | Minimum Rate | Maximum Rate | Minimum Rate | Maximum Rate |
| 4 | $410 | $365 | $425 | $370 | $425 |
| 5 | $375 | $385 | $475 | $400 | $475 |
| 6 | $375 - $430 | $405 | $475 | $425 | $475 |

**Table 2
Arent Fox Associates
Billing Rates vs. Comparables
By Years of Experience**

Arent Fox national rates are current (2011), while rates of comparable firms are as of 2010

**Source:**
2010 National Law Journal Billing Survey and Associate Class Billing Survey; MSL – Biery-Pankratz Attorney Chart (2)

## CONCLUSION

24. The relevant market for the types of legal services at issue in this case is one that is nationwide. Furthermore, the national rates of plaintiffs' attorneys are competitive with market rates.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on *Dec 20, 2011* at Washington, DC.

*[signature]*
Laura A. Malowane