# EXHIBIT 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DOROTHY L. BIERY, ET AL., AND <br> JERRAMY AND ERIN PANKRATZ, ET AL. ) <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES <br><br> Defendant. | Civil Action No. 07-693L and 07-675L <br> CONSOLIDATED |

### SUPPLEMENTAL DECLARATION OF DR. LAURA A. MALOWANE

I, Laura A. Malowane, declare as follows:

1. I previously provided a Declaration on this matter that addressed the relevant market for determining attorneys' fees in this case, and whether the billing rates of Plaintiffs' attorneys are reasonable given current market rates. I stated that it was my opinion that the relevant market for the legal services at issue in this case is one that is nationwide, and that the Plaintiffs' attorneys' billing rates are reasonable and competitive with market rates.

2. I have reviewed Defendant's Cross-Motion for Partial Summary Judgment and Supporting Memorandum on the Proper Methodology to Determine a Reasonable Statutory Fee Award ("Cross-Motion") and make this Supplemental Declaration in response. Additional materials that I have reviewed in preparation of this response are listed in Appendix 1.

## ANALYSIS

3. In their Cross-Motion, Defendant outlines what it perceives to be three main problems with my original Declaration. Below I address each of these criticisms in the order that they are presented in the Cross-Motion.

4. Defendant contends that "First, in concluding that the prevailing market rate is one that is "nationwide," Dr. Malowane's opinion hinges on whether these Trail Act cases constitute 'complex federal litigation'."[1] It is incorrect to state that my opinion of the relevant geographic market for the legal services at issue hinges on whether Trail Act cases are defined as complex federal litigation. A classification of litigation as complex, federal or any other arbitrary label is not necessary for determining the appropriate market for services provided in that area of the law. Instead, as with any economic market, an appropriate analysis of the demand and supply for the services at issue is required.

5. My conclusion that the relevant geographic market is one that is nationwide is based on an analysis of both the demand and supply factors involved with the kinds of legal services at issue. Plaintiffs in cases involving matters such as these can and do come from anywhere in the country. Likewise attorneys providing the services related to this area of the law are not concentrated in one particular region. Knowledge of regional rules or close everyday proximity to a client or specific courthouse is not as important as in some other types of legal matters. For these and other reasons as outlined in my original Declaration, the relevant market for the legal services at issue in this case is one that is nationwide. Contrary to Defendant's statement, this conclusion holds regardless of whether the legal issues involved in this matter are labeled as "complex federal litigation."

6. The second criticism Defendant has of my Declaration is that I offer an opinion on whether the billing rates of Plaintiffs' attorneys are reasonable given current market rates without "independently confirming whether Plaintiffs' counsel have ever charged or have realized any payment based on these "national" rates."[2] As I stated in my deposition, I confirmed with counsel that these national rates have in fact been billed and collected in

---

[1] Defendant's Cross-Motion for Partial Summary Judgment and Supporting Memorandum on the Proper Methodology to Determine a Reasonable Statutory Fee Award, p. 39.

[2] Cross-Motion, p. 40.

past matters.[3] In addition, I confirmed that these rates are within the range of the published billing rates of attorneys at Arent Fox and Lathrop & Gage as outlined by The National Law Journal billing surveys.[4] More to the point, the question of whether or not these rates are "reasonable given current market rates" requires a comparison of these rates to those of attorneys from comparable types of firms. This is an analysis I discussed in my original Declaration where I conclude that the national rates of Plaintiffs' attorneys are competitive with market rates.

7. The third general criticism that Defendant has of my Declaration is that I do not take into account that the "primary attorneys working on this case all reside in the St. Louis, MO area."[5] As I discussed in my deposition, the attorneys and paralegals I examine were the major contributors to this matter and each billed at least 100 hours.[6] This legal team is not solely concentrated in St. Louis as Defendant suggests, and is instead spread throughout major cities in the country including New York and Los Angeles.[7] Even if, contrary to the facts of this case, the entire legal team was in fact located within Missouri, this piece of information alone would not necessitate a finding that the relevant market is Missouri. If other attorneys from other firms in other locations can perform the same type of work for the same types of plaintiffs, then those attorneys and those areas also need to be included in the relevant market. This is because market rates are set by supply and demand over time and over multiple transactions and not, as Defendant implies, by one set of plaintiffs and one set of attorneys in one particular matter.

---

[3] Deposition of Laura Malowane, April 19, 2012, pp. 99-101.

[4] The National Law Journal billing surveys is comprised of The National Law Journal (NLJ) 2010 Billing Survey, the 2010 National Law Journal billing Survey and Associate Class Billing Survey and The NLJ 250 Annual Survey of the Nation's Largest Law Firms.

[5] Cross-Motion, pp. 40-41.

[6] Malowane Deposition, p. 81.

[7] In my original Declaration I treat Arent Fox attorneys with office locations in New York and Los Angeles as being nevertheless part of a firm with its main office in Washington, DC. It should be noted, however, that attorney fees of large firms with main offices in New York are generally higher than attorney fees of similar size firms with main offices in Washington, DC. Attorney fees of large firms with main offices in Los Angeles are similar to those of large firms with main offices in Washington, DC. (See The National Law Journal, 2010 billing surveys)

8. Furthermore, even if contrary to the evidence, one were to accept Defendant's proposition that the St. Louis, Missouri area is the correct geographic market to look at, Plaintiffs' attorneys' fees are still reasonable given current market rates in that area. In my original Declaration I show that, according to The National Law Journal surveys, the rates of the attorneys from Lathrop & Gage fall within the range of billing rates of attorneys from comparable firms in the Missouri area. In Table 1 below, I compare the rates of the Arent Fox attorneys with the billing rates of these same Missouri area firms. As the table reveals, the national rates of partners and associates from Arent Fox fall within the range of billing rates of attorneys from similarly large firms in Missouri.

**Table 1**
**Billing Rates**
**Arent Fox vs. Missouri Firms**

| Attorney Type | National Rate | Missouri Firms | |
| --- | --- | --- | --- |
| | | Minimum Rate | Maximum Rate |
| Arent Fox Partner | $705 - $706 | $230 | $804 |
| Arent Fox Associate | $375 - $430 | $150 | $550 |

Notes:
Arent Fox national rates are current (2011), while rates of Missouri firms are as of 2010
Source:
2010 National Law Journal Billing Survey and Associate Class Billing Survey;
MSL - Biery-Pankratz Attorney Chart (2)

9. One particular Missouri firm included in Table 1 calculations and also in my original Declaration is the law firm of Thompson Coburn. In their Cross-Motion, Defendant states that federal court decisions reveal that the hourly rates actually charged or awarded to

Thompson Coburn attorneys, including partners, fall below the minimum partner rates as reported by The National Law Journal.[8] As support for this overly broad statement Defendant offers one example of an attorney from Thompson Coburn, Mr. Jeffrey Masson, who requested in the Monsanto Company v. Strickland 604 F. Supp. 2d 805 (D.S.C. 2009) matter that his hourly rate be awarded for patent law work. Because Mr. Masson's requested rate in 2009 ($230) was below the lowest partner rate at Thompson Coburn in 2010 ($310), Defendant concludes that all rates billed and awarded to Thomson Coburn attorneys, including partners, fall below the billing rates cited in The National Law Journal.[9]

10. Defendant's conclusion is wrong and is based on erroneous factual assumptions. The attorney at issue, Mr. Masson, was in fact an associate at the time of the Monsanto case with approximately 6 years of post law school experience.[10] According to Thompson Coburn's website, he did not become a partner until 2011. A comparison of an associate rate to a partner rate, as the Defendant has done, is clearly flawed. Instead, Mr. Masson's rate as an associate should be compared to billing rates of other associates from Thompson Coburn. Such a comparison reveals that Mr. Masson's associate rate of $230 as of 2009 is squarely within the range of billing rates of associates at Thompson Coburn in 2008 and 2010 as shown by The National Law Journal.[11] The decision in the Monsanto matter indicates that the court found the actual billing rate of an associate from Thomson Coburn reasonable.[12]

---

[8] Cross-Motion, p. 25.

[9] Cross Motion, pp. 25-26.

[10] http://www.thompsoncoburn.com/people/find-a-professional/jeffrey-masson.aspx

[11] While I do not have access to the attorney rates provided in the 2009 edition of The National Law Journal, billing rates that fall within the range of 2008 and 2010 published rates presumably also fall within the range of 2009 rates.

[12] Defendants refer to six other cases in support of their position. (West v. Matthews Int'l Corp. No. 4:09 CV 1867 DDN, 2011 WL 3904100; Robinson v. Custom Tree & Lawn Serv., 2010 WL 3399076 (E.D. Mo.); Gohn v. Hill, 2011 WL 1630327 (E.D. Mo.); Hunter Engineering Co. v. Hennessy Ind., Inc., 2010 WL 2628336 (E.D. Mo.); Daugherty v. Central Credit Services, 2010 WL 1610388 (E.D. Mo.); and Trickey v. Kaman Industrial Tech. Corp., 2011 WL 590990 (E.D. Mo.)). I have reviewed each of these cases and the decisions do not cause me to change my opinion and testimony as stated in my prior declaration or during my deposition.

11. Finally, although not outlined as a central criticism of my Declaration, Defendant seems to take issue with the use of published rates from The National Law Journal as a measure of reasonable hourly rates of attorneys from similar types of firms to those of Plaintiffs' attorneys. Defendant's criticism of the use of The National Law Journal surveys seems to center on two issues: that firms sometimes use alternative billing methods rather than published hourly rates, and that I have previously stated in an affidavit on another matter (Beth M. Norden v. G. Wayne Clough, "Norden") that The National Law Journal surveys can be misleading to use.[13]

12. While it is true that firms do sometimes offer alternative forms of billing, the degree to which this is done varies by firm and by attorney. Also, alternative billing does not necessarily mean lower billing. Alternative billing can mean flat fees, contingency fees and other various billing arrangements and not simply discounted fees. In fact, it can mean billing that results in compensation that is higher than standard billing rates.[14] In addition, as I have stated at deposition and in my Norden affidavit, it is an important factor to consider that The National Law Journal is a survey of the largest 250 firms in the country (of which both Plaintiffs' attorneys' firms are included). It can therefore be misleading when used as a measure of reasonable rates for attorneys from small, one-office firms. In the Norden matter, the two attorneys at issue each came from one-office, one-attorney firms. It is well recognized that firms use such factors as firm size to set rates.[15] Small and medium law firms presumably do not have the same overhead as large firms and therefore can afford to offer lower rates to its clients. Similarly, larger multiregional or multinational firms may be able to command higher fees due to, among other reasons, an offering of more services, having a better national or international reputation, or being located in a higher rent and higher profile area. For these reasons The

---

[13] Cross-Motion, pp. 26-7.

[14] See, for example, The Wall Street Journal, April 25, 2012, "Biggest Lawyers Grab Fee Bounty" where it states that "At the very highest end, alternative fee structures can push effective billing rates to several thousand dollars an hour."

[15] For a discussion of cases that have recognized that billing rates generally vary by firm size see Memorandum Opinion, Dick Anthony Heller v. District of Columbia, December 29, 2011.

National Law Journal rates can be misleading when applied to attorneys at firms that are not part of the survey.[16] This is not the case here.

13. As an alternative source, Defendant provides one exhibit from the 2011 Missouri Bar Economic Survey which shows the 2010 hourly billing rates of all attorneys in Missouri who responded to the survey.[17] Although Defendants provide only 3 pages and one exhibit from the survey, the full document consists of 152 pages and includes an introduction which states that "(t)he survey results should be considered and used in its entirety in order to avoid misconstruing the meaning of individual exhibits within the report."[18] When read as a whole it is clear that the average hourly rates cited by Defendants include fees of a wide variety of individuals from many different kinds of firms and practice areas, and with many different titles and years of experience. Unlike the National Law Journal rates I provide in my Declaration, Defendants make no attempt to break down their cited rates by titles, years of experience or firm size.

14. To identify rates that are comparable to Plaintiffs' attorneys, more detailed characteristics of the attorneys surveyed needs to be known. As stated earlier, firm size is an important factor in the determination of attorney compensation. The Missouri Bar Economic Survey similarly shows that sole-practitioners earn less than others in private practice, attorneys with fewer years of experience earn less than their more experienced counterparts, part-time attorneys earn less than full-time attorneys, and incomes of attorneys vary greatly by practice area and county of practice.[19] By way of example, the maximum income reported for a family law attorney is $400,000 while the same figure for an administrative/regulatory law attorney is $10,000,000.[20] Despite such wide variations in attorney compensation, the Defendants cite rates from a survey that includes all of these different kinds of attorneys. Without providing any further details, the figures

---

[16] See, for example, Memorandum Opinion, Dick Anthony Heller v. District of Columbia, December 29, 2011, where the court accepted my testimony that law firm size is an important factor to consider when evaluating sources of evidence of prevailing market rates of attorneys.

[17] The Missouri Bar Economic Survey Results, 2011.

[18] Missouri Economic Survey, Part I, p. i.

[19] Missouri Economic Survey, Part II, pp. 14-15, 21, Part III, pp. 9-10, 16, 20-21, 27-28, Part V, p. 9.

[20] Missouri Economic Survey, Part III, p. 28.

from this survey should be interpreted for what they are, averages across all different kinds of attorneys within the state of Missouri.

## CONCLUSION

15. In their Cross-Motion, Defendant uses erroneous facts and faulty reasoning to declare that the St. Louis, MO area is the relevant community to determine attorneys' fees. For reasons discussed above and in my original Declaration, the relevant market for the legal services at issue in this case is one that is nationwide, and the national rates of Plaintiffs' attorneys are competitive with rates in this market. Furthermore, even if (contrary to the evidence) the relevant market is assumed to be St. Louis, MO, Plaintiffs' attorneys' fees are still reasonable given current market rates of comparable attorneys.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on June 4, 2012 at Washington, DC.

*Laura Malowane*

Laura A. Malowane